85 N.J. Super. 143 (1964)
204 A.2d 204
GERALDINE GILBERT, ETC. (AND 4 OTHERS), PLAINTIFFS-RESPONDENTS,
v.
UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1964.
Decided October 21, 1964.
*144 Before Judges GAULKIN, FOLEY and COLLESTER.
*145 Mr. Charles J. Kahwaty argued the cause for appellant Unsatisfied Claim and Judgment Fund Board.
Mr. John Selawsky argued the cause for respondents (Messrs. Marcus & Levy, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
This is an appeal by the Unsatisfied Claim and Judgment Fund Board (Fund) from an order of the Passaic County District Court directing payment of judgments entered in favor of plaintiffs.
The evidence before the court in support of plaintiffs' application for payment by the Fund was uncontradicted. On October 20, 1958 plaintiffs Helen M. Gilbert, Geraldine Gilbert, an infant aged 27 months, and Margaret Rose Rosati, an infant aged 21 months, were passengers in the automobile owned and operated by Margaret M. Hollowood (formerly Margaret M. Rosati), mother of the infant plaintiff Margaret Rose Rosati. Following a shopping trip Mrs. Hollowood stopped her motor vehicle at the curb on Broadway in Paterson, New Jersey, and went to purchase candy at a nearby store for her daughter. While she was gone, the vehicle was struck by an automobile operated by Willie R. Newell and owned by James D. Holston. The latter was asleep on the rear seat of his car at the time of the collision. Both Newell and Holston were residents of New York. Mrs. Gilbert and the two infant children were injured.
Almost a year later, on September 18, 1959, plaintiffs' attorney wrote a claim letter to the Merchants Mutual Insurance Company, Holston's insurance carrier. On October 28, 1959 the insurance company notified plaintiffs' attorney that it had disclaimed liability under the terms of its policy.
Plaintiffs, after giving timely notice to the Fund, instituted suit against Holston and Newell. Service of process against Holston was made through the New Jersey Division of Motor Vehicles pursuant to R.S. 39:7-1 et seq. However, while an attempt to serve Newell in a like manner was undertaken, the *146 latter could not be found and service of process was never obtained. Following a trial of the action against Holston, which was defended by the Fund, judgment was entered against Holston in the amounts of $1,500 for Helen M. Gilbert, $300 for Geraldine Gilbert, and $300 for Margaret Rose Rosati.
Plaintiffs thereafter made application for payment of the judgment by the Fund pursuant to N.J.S.A. 39:6-70. The Fund opposed. Following a summary hearing, the court granted the application.

I.
The Fund contends that failure of plaintiffs to serve Newell with process and to reduce their claims against him to judgment bars them from recovery under the following provisions of the statute:
N.J.S.A. 39:6-70
"* * * [T]he applicant shall be required to show * * * (m) whether or not he has recovered a judgment in an action against any other person against whom he has a cause of action in respect of his damages for bodily injury or death or damage to property arising out of the accident and what amounts, if any, he has received by way of payments upon the judgment, or by way of settlement of such cause of action, in whole or in part, from or on behalf of such other person."
N.J.S.A. 39:6-71
"The court shall make an order directed to the treasurer requiring him to make payment from the fund of such sum, if any, as it shall find to be payable upon such claim, pursuant to the provisions of and in accordance with the limitations contained in this act, if the court is satisfied, upon the hearing:

* * * * * * * *
(b) That the applicant has fully pursued and exhausted all remedies available to him for recovering damages against all persons mentioned in sub-paragraph (m) of section 10 by
(1) Commencing action against all such persons against whom the applicant might reasonably be considered as having a cause of action in respect of such damages and prosecuting every such action in good faith to judgment * * *." (Emphasis added)
The Fund argues that under the literal construction of the statute it is mandatory that a judgment be entered against *147 Newell to qualify plaintiffs for payment by the Fund; that inability to locate Newell and to proceed to judgment against him does not excuse compliance with the statutory requirement.
The proofs before the trial court showed that plaintiffs brought suit against Newell by filing their complaint and seeking to serve process upon him in New York through the Division of Motor Vehicles. The notice sent by the Division to Newell's last known address was returned marked "Moved, left no address." Efforts to locate Newell through the New York Bureau of Motor Vehicles and the rental agent at his last known address proved fruitless. It is undisputed that plaintiffs in good faith pursued and exhausted all steps to locate and cause process to be served upon Newell.
It has been repeatedly held that the Unsatisfied Claim and Judgment Law is to be liberally construed to advance and carry out its beneficial purposes, due regard being had to protect the Fund against fraud and abuse. Giles v. Gassert, 23 N.J. 22, 34 (1956); Douglas v. Harris, 35 N.J. 270, 279 (1961).
In discussing the interpretation to be given to provisions of the Unsatisfied Claim and Judgment Law, the Supreme Court, in Giles v. Gassert, supra, stated:
"The sense of a law is to be collected from its object and the nature of the subject matter, the contextual setting, and the statutes in pari materia; and the import of a particular word or phrase is controlled accordingly. Isolated terms cannot be invoked to defeat a `reasonable construction.' Wright v. Vogt, 7 N.J. 1 (1951). See also State v. Brown, 22 N.J. 405 (1956). The statute is to be liberally construed to advance the remedy, due regard being had to the protection of the Fund against fraud and abuse and to the fulfillment of the essential legislative policy. The literal sense of terms is not to have ascendancy over the reason and spirit of the expression as a whole." (at pp. 33-34)
In Gray v. Tice, 52 N.J. Super. 309 (Law Div. 1958), it was held that the language of N.J.S.A. 39:6-71(b)(1)  "prosecuting every such action in good faith to judgment"  should be given a liberal interpretation, and that the entry *148 of a judgment against a judgment debtor is not always a mandatory prerequisite for payment by the Fund.
In Nash v. Iamurri, 76 N.J. Super. 167 (Law Div. 1962), involving compliance with the provisions of N.J.S.A. 39:6-78, which provides that in a hit-and-run case the claimant must make all reasonable efforts to ascertain the identity of the tortfeasor, and if discovered, to pursue him for recovery in good faith before turning to the Fund, the court stated that "The key to the construction of the requirement is the word `reasonable.'" While Nash involved the hit-and-run provisions of the statute, the sections of the act stand in pari materia and must be considered together in a construction involving the ascertainment of the policy of the enactment. Douglas v. Harris, supra, at p. 281.
In the instant case plaintiffs have entered judgment against Holston, and it is undisputed that they have taken all reasonable steps to reduce their claim against Newell to judgment. That being the case, it is not mandatory that the action be prosecuted to a final judgment in order to recover from the Fund.

II.
The Fund alleges plaintiffs failed to submit satisfactory proof, required by N.J.S.A. 39:6-70(f), that defendant Holston was not insured by a policy of automobile liability insurance under the terms of which the insurer was liable to pay the amount of the judgments. It further contends that in every instance where an insurance company disclaims, the Fund should not be compelled to pay unless a suit is first instituted against the carrier to have the court determine the validity of the disclaimer.
The evidence before the trial court consisted of affidavits submitted on behalf of plaintiffs and a copy of the insurance policy issued by the Merchants Mutual Insurance Company to Holston on October 7, 1958. No contradictory proofs were presented to the court by the Fund.
*149 The affidavits showed that the first notice Holston's insurance company received of the accident was the letter from plaintiffs' attorney of September 18, 1959, 11 months after it happened; that Holston admitted failure to give the notice required under the terms of the policy, and that accordingly the company disclaimed liability.
The insurance policy was executed and delivered to Holston in New York, and the laws of that state apply in determining the rights of the parties to said insurance policy. Kraynick v. Nationwide Insurance Company, 72 N.J. Super. 34 (App. Div. 1962); Buzzone v. Hartford Accident and Indemnity Co., 23 N.J. 447 (1957). The trial court held that under the law of New York it was clear that the disclaimer was justified and that plaintiffs would be precluded from recovery in an action against the company on the policy. See Neptune v. MacDougall, 28 Misc.2d 800, 217 N.Y.S.2d 631 (Sup. Ct. 1961); Deso v. London & Lancashire Indemnity Co. of America, 3 N.Y.2d 127, 164 N.Y.S.2d 689 (Ct. App. 1957); Acosta v. Roach, 12 Misc.2d 494, 172 N.Y.S.2d 116 (Sup. Ct. 1958); Abitante v. Home Indemnity Co., 240 App. Div. 553, 270 N.Y.S. 641 (App. Div. 1934).
The Fund relies on Wormack v. Howard, 33 N.J. 139 (1960), in support of its position that where the insurance carrier of a judgment debtor disclaims, the judgment creditor should be required to sue the insurance company before the Fund is compelled to pay the judgment. The facts in that case are clearly distinguishable.
In Wormack plaintiff made no attempt to establish whether the disclaimer might not be based upon frivolous or nonexistent facts and merely assumed the truthfulness of the affidavit furnished by the insurance company. In the instant case plaintiffs received from the insurance company a copy of Holston's letter admitting he had not given the required notice. The Fund had an opportunity to investigate the bona fides of the disclaimer. It defended the action against Holston after receipt of the disclaimer and, on the motion to compel *150 payment, it offered nothing to cast doubt upon the validity or bona fides of the disclaimer.
We do not read Wormack as requiring suit to be brought against a debtor's insurance carrier in every case as a prerequisite to the entry of an order requiring the Fund to pay a judgment. In our view, if the proofs before the trial court establish without dispute that the insurance carrier had a legal right to disclaim, such an action is unnecessary.
At oral argument the Fund's attorney argued that proof of compliance with the requirements of N.J.S.A. 39:6-70 could not be established by affidavits, and that the testimony of witnesses was necessary at the hearing before the court. We do not agree. The statute provides that the court shall hear an application for payment by the Fund in a summary manner. Such applications may be heard and disposed of by the court on affidavits submitted by the parties, similar to applications for summary judgment. We are satisfied that the uncontradicted evidence presented by plaintiff was sufficient proof of lack of insurance coverage on the part of the judgment debtor, as required by N.J.S.A. 39:6-70(f).

III.
The Fund further contends that the infant plaintiff Margaret Rose Rosati is precluded from recovering from the Fund because at the time of the accident she was riding in an uninsured automobile owned by her mother.
N.J.S.A. 39:6-70 requires a claimant to show,
"(d) He was not at the time of the accident, operating or riding in an uninsured motor vehicle owned by him or his spouse, parent or child, * * *."
It is undisputed that immediately prior to the accident Margaret Rose Rosati, together with the other plaintiffs, had been riding as a passenger in her mother's automobile while the adults were on a shopping trip. The accident occurred after Mrs. Hollowood had stopped her motor vehicle at the *151 curb on Broadway in Paterson and had alighted to go to a nearby store.
Plaintiff contends that since the motor vehicle was lawfully stopped at the curb she was not "riding" in her mother's uninsured vehicle, and hence is entitled to payment by the Fund.
We do not agree. Plaintiff was a passenger in a motor vehicle which was temporarily at a standstill. The occupants were awaiting the return of the driver to continue their journey. It is commonly said that a person is riding in a vehicle even when the vehicle is standing at rest, if the vehicle is being used at the time for transporting people and is only temporarily at a standstill. Standard Life & Accident Insurance Co. v. Hardee, 330 S.W.2d 544 (Tex. Civ. App. 1959). See also Brown v. Hearthstone Insurance Co. of Mass., 19 App. Div.2d 578, 240 N.Y.S.2d 239 (App. Div. 1963); Miller v. Inter-Ocean Casualty Co., 110 W. Va. 494, 158 S.E. 706 (Sup. Ct. App. 1931). In the instant case it may be said that in the plain and ordinary meaning of the word, plaintiff was riding in the same way a person on a journey would commonly and ordinarily be said to be riding, even though her progress forward was temporarily stopped by an obstacle in the road, or by stopping to make inquiry, or by stopping at a traffic light.
Since the infant plaintiff Margaret Rose Rosati was riding in an uninsured vehicle owned by her mother, she is barred from a recovery from the Fund.
The order for payment of the judgment in favor of plaintiff Margaret Rose Rosati is reversed and vacated; the order for payment of the judgments in favor of Helen M. Gilbert and Geraldine Gilbert is affirmed.