## NICHOLSON ET AL. *v.* UNSATISFIED CLAIM AND JUDGMENT FUND BOARD

[No. 331, September Term, 1971.]

*Decided May 10, 1972.*

454

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*Joseph F. Lentz, Jr.,* for appellants.

*Jerome T. May* and *William E. Brannan, Assistant Attorney General,* with whom were *Serio, Hopper, Blumenthal & Carmody* and *Francis B. Burch, Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from the Circuit Court for Anne Arundel County where Judge Evans denied the petition of Rufus Nicholson, Mary Reddick and Mood Gibson,

appellants, for leave to sue the Commissioner of Motor Vehicles under the Unsatisfied Claim and Judgment Fund Law.[1] The facts are quite simple and not the subject of dispute.

On July 17, 1966, while passengers in a car owned and operated by John Martin, Jr., appellants were involved in an accident on Queenstown Road in Anne Arundel County, which allegedly occurred when an unknown automobile was driven into their lane of traffic. In an effort to prevent a collision with this errant vehicle, Martin supposedly swerved his car but, though successful in his primary objective of avoiding contact with the intruder, lost control of his own automobile which ultimately turned over. Meanwhile, the catalyst of the mishap, the unmolested phantom car, disappeared down the highway. As a result of this accident, the passengers, on July 2, 1967, filed a petition for leave to sue the Commissioner of Motor Vehicles alleging that the crash was not caused by Martin, who was driving in "a careful and prudent manner," but instead resulted from the negligence of the unidentified motorist. The application was explicitly brought under Maryland Code (1957, 1967 Repl. Vol.), Art. 66½, § 167. (In 1970 the Legislature by Ch. 534 of the Laws of Maryland repealed and re-enacted that Article so that § 167 is now codified in the Code (1957, 1970 Repl. Vol.) as Art. 66½, § 7-620.) In the event the offending driver is unknown, that section enumerates the requirements which victims of hit and run accidents must comply with before being permitted to initiate suit against the Board. In a memorandum opinion Judge Childs denied the petition after concluding that there was

1. By Ch. 543, Laws of Maryland 1968, effective July 1 of that year, the Unsatisfied Claim and Judgment Fund Board replaced the Commissioner of Motor Vehicles as the party to be sued. Since the petition here was filed after that date it should have requested permission to sue the Board rather than the Commissioner. However, appellants' mistake is of no consequence because under the specific provisions of Art. 66½, § 7-627.1 Code (1957, 1970 Repl. Vol.) whenever the petition seeks leave to sue the Commissioner the Board is automatically substituted.

no phantom car,[2] and even if "there were shown to be a second vehicle the Court is not satisfied that reasonable efforts were made to ascertain the identity of the phantom" as required by § 167 (f), now § 7-620 (5). This section necessitates a finding by the court that:

> "All reasonable efforts have been made to ascertain the identity of the motor vehicle and of the owner and operator thereof and either that the identity of the motor vehicle and the owner and operator thereof cannot be established, or that the identity of the operator, who was operating the motor vehicle without the owner's consent, cannot be established."

Though it is unnecessary for us to decide whether the passengers made all reasonable efforts to identify the driver of the other automobile, our review discloses a record devoid of any evidence which indicates the appellants made even the slightest cursory attempt to uncover information concerning the phantom. In light of our recent decision in *Grady v. Unsat. C. & J. Fund Bd.*, 259 Md. 501, 270 A. 2d 482 (1970), with a factual pattern akin to the one here, where we held bare minimal efforts were not sufficient to satisfy the requirements of § 167 (f), an appeal claiming error in Judge Childs' ruling would not have been successful. See also *Hickman v. Unsatisfied C & J Fund*, 255 Md. 267, 257 A. 2d 426 (1969).

Following denial of their petition, appellants filed suit against Martin. The trial court, pursuant to the procedures outlined in *Rosenberg v. Manager, U. C. & J. F. Bd.*, 260 Md. 164, 170, 271 A. 2d 692 (1970), instructed

---

2. In *Weber v. Unsat. C. & J. Fund Bd.*, 261 Md. 457, 276 A. 2d 86 (1971), we held that it was error for the trial court to deny a petition for leave to sue the Board based on a determination that, as a fact, there was no phantom automobile. However, in the case now before us, while Judge Childs apparently misconstrued his function in much the same way, by finding no second vehicle was involved, he did have the authority to premise his decision on the passengers' lack of reasonable efforts to locate the other car. In any event, no appeal was taken from the ruling that a phantom car did not exist and therefore that question is not before us.

the jury under Maryland Rule 560 to deliver a special verdict which would specify whether Martin was negligent in operating his car on that July day in 1966 or if the mishap was caused by an unknown motorist. The jury decided Martin was not at fault but that the accident resulted from the action of a phantom driver.

Having been twice frustrated but now armed with a jury determination that a phantom car did exist, appellants, on August 10, 1970, again petitioned the Circuit Court for Anne Arundel County for leave to sue the Board, this time under § 7-622 of Art. 66½ of the Code.[3] That section in part provides:

> "Other 'hit-and-run' cases.
>
> (a) When in an action . . . judgment is rendered for the defendant on the sole ground that the death or personal injury was occasioned by a motor vehicle—
>
> (b) The identity of which, and of the owner and operator of which, has not been established . . .
>
> (c) . . .—such cause shall be stated in the judgment and the plaintiff in the action, within three months from the date of the entry of such judgment, may make application for authority to bring an action upon the cause of action against the Board *in the manner provided in §§ 7-620 and 7-623 of this article.*[4] (Emphasis added.)

Judge Evans denied this latest request after deciding

---

3. There were numerous delays in concluding the negligence action against Martin which prolonged this case over the many years since the occurrence of the crash.

4. Section 7-623 states:
   "When an action has been commenced in respect of the death or injury of any person arising out of the ownership, maintenance or use of a motor vehicle in this State on or after June 1, 1959, the plaintiff shall be entitled to make the Board a party thereto if the provisions of § 7-620 or § 7-622 shall apply in the case, and the plaintiff has made the application and the court has entered the order provided for in § 7-620."

that: "Petitioners are barred by the doctrine of res judicata from a trial de novo on the question of the exertion of 'all reasonable efforts' to ascertain the identity of the 'phantom vehicle', its owner or operator as required by Section 7-620 (5)."

This appeal is taken from that ruling. Appellants' sole contention is that Judge Evans erred by concluding Judge Childs' initial denial of leave to sue under the Unsatisfied Claim and Judgment Fund Law constituted a bar to their bringing this later application. We do not agree. In determining whether the well established doctrine of res judicata applies so as to bar the granting of the petition here, we must address ourselves to the following questions:

    (i)  Is the issue presented in the current action identical to the one determined in the prior adjudication?

   (ii)  Are the parties in the present litigation the same or in privity with the parties to the earlier dispute?

  (iii)  Was there a final judgment on the merits in the initial action?

If the response to all these inquiries is in the affirmative then res judicata was properly invoked to prevent this matter from being relitigated. *Garrett Park v. Montgomery Co.*, 257 Md. 250, 257, 262 A. 2d 568 (1970); *Arundel Asphalt v. Morrison*, 256 Md. 170, 173, 259 A. 2d 789 (1969); *A. B. Veirs, Inc. v. Whalen*, 256 Md. 162, 166-67, 259 A. 2d 516 (1969); *Pat Perusse Realty v. Lingo*, 249 Md. 33, 238 A. 2d 100 (1968).

(i) Clearly, the issue to be decided is identical in both petitions and is even couched in the same language; the only difference between the initial application to sue the board and the latest, is that one was instituted prior to bringing an action against Martin, while the other followed an adjudication that he was not negligent. Consequently, the suits were initiated under different sections of the Code; but it is of no significance whether

§ 7-620 (formerly § 167), § 7-622 or for that matter § 7-623 are utilized. The three differ in the following manner: under § 7-620 permission is requested to sue the board prior to docketing any action; § 7-622 is employed to bring suit against the board subsequent to a determination at trial that a phantom vehicle and not the defendant was negligent; finally § 7-623 is used to ask permission to implead the Fund in a proceeding already commenced. However, all these sections specifically require compliance with the provisions of § 7-620 which includes the necessity of reasonable efforts to ascertain the identity of the phantom vehicle—lack of which caused the first petition to be denied.

(ii) We need not consider whether the parties are in privity, since in both instances the same litigants are involved.

(iii) This Court has never been called upon to specifically decide whether the denial of leave to institute an action against the Board constituted a final judgment on the merits, nor has the issue been questioned on appeal. However, without fail, we have always considered the trial court's decision denying leave to sue the Board as a final judgment, since it is a proceeding independent of any subsequent litigation. *Cherry v. Unsat. C. & J. Fund Bd.*, 264 Md. 696, 288 A. 2d 136 (1972); *Johnson v. Unsat. C. & J. Fund Bd.*, 262 Md. 90, 277 A. 2d 5 (1971); *Weber v. Unsat. C. & J. Fund Bd.*, 261 Md. 457, 276 A. 2d 86 (1971); *Jones v. Unsat. C. & J. Fund Bd.*, 261 Md. 62, 273 A. 2d 418 (1971); *Grady v. Unsat. C. & J. Fund Bd.*, 259 Md. 501, 270 A. 2d 482 (1970); *Hickman v. Unsatisfied C & J Fund*, 255 Md. 267, 257 A. 2d 426 (1969). Though we have never had before us an appeal from the granting of an application for leave to sue the Board, the same logic would apply. The answers here, far from requiring the abstract and ponderous consideration one associates with Rodin's "Thinker", are straightforward; in fact we would be hard put to find a case that is more obviously encompassed by the tentacles of res judicata. It is readily apparent that the trial court

properly invoked the doctrine and we affirm its decision.

*Order affirmed.*

*Costs to be paid by appellants.*